# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

**UNITED STATES OF AMERICA,**
         **Appellee**        :        **23-1859**

      **V.**                 :

**ANTONIO CASILLAS MONTERO,**     :
      **Defendant-Appellant**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIEF OF APPELLANT
ANTONIO CASILLAS MONTERO

LINDA BACKIEL
First Circuit Bar #8766
Av. Sierra Morena #267
PMB 597
San Juan, Puerto Rico
00926-5583
787-751-4951
lbackielr@gmail.com

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE AND COURSE
OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

 SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      The seven year sentence, more than five and a half times
      greater than recommended by the Guidelines and the national
      average is both procedurally and ubstantively and unreasonable . . . . . . . 22

      I.     The District Court failed to explain the reasons for the extent
           of its variance–not a few upward steps, but a multiplier. . . . . . . . . 25

      II.    The sentence was unreasonable because it ignored
           the Guidelines concept of grouping and violated
           the constitutional protection against double jeopardy. . . . . . . . . . . 35

      III.   The seven year sentence is substantively unreasonable. . . . . . . . . 41

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Certificate of Word Count . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

# TABLE OF AUTHORITIES

**Authority**                                                    **Pages**

## UNITED STATES CONSTITUTION

Fifth Amendment
> Double Jeopardy Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

## CASES

*Bell v. United States*,
> 349 U.S. 81 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 37

*Club Gallístico de Puerto Rico Inc. v. United States*,
> 414 F. Supp. 3d 191 (D. P. R. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Gall v. United States*,
> 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hernandez-Gotay v. United States*,
> 985 F. 3d 71 (1ˢᵗ Cir. 202) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kimbrough v. United States*,
> 552 U.S. 85, 107 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Koon v. United States*,
> 518 US 81 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Anderson*
> 7:16-CR-00122-BO (E.D. N.C.)
> *aff'd*, 796 F. App'x 795 (4ᵗʰ Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Andrews*,
> No 7-16-CR-00122-BO-1-10 (E.D.N.C.),
> *aff'd. sub nom. United States v. Richardson*,
> (Nos 14-4761, 4770, 18-4023 and 18-4023

12/12/2019 *United States v. Andrews*, No 7-16-CR-00122-BO-1-10
(E.D.N.C.), *aff'd. sub nom. United States v. Richardson*,
(Nos 14-4761, 4770, 18-4023 and 18-4023(Andrews),
2/12/2019 *(unpublished, not precedential)* . . . . . . . . . . . . . . . . . 48, *passim*

*United States v. Berry,*
  09-CR-3010, 2010 WL 1882057 (S.D. Ill. 2010)
  *aff'd sub nom. United States v. Courtland*,
  642 F.3d 545 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27, *passim*

*United States v. Breton*,
  740 F.3d 1 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*United States v. Clogston*,
  662 F.3d 588 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Colón-Cordero*,
  91 F.4th 41(1st Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Courtland*,
  642 F3d 545 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 39

*United States v. Del Valle-Rodríguez*,
  761 F.3d 171 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Delgado-Sánchez*,
  849 41 F.3d 1 (1st Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Ebrin Castro*
  3:16-cr-00153 (D.P. R 2017) . . . . . . . . . . . . . . . . . . . . . . . 11, 14, *passim*

*United States v. Field*,
  858 F.3d 24 (1st Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Flores-Machicote*,
  706 F.3d 16 (1st Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. García Torres*,
341 F.3d 61 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 35

*United States v. Hackman*,
630 F.3d 1078 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Holguin-Hernandez v. United States*,
___ U.S. ___, 140 S. Ct. 762 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Jermaine Hadley*,
Nos. 21-12082, 21-12083 (11th Cir. 2021)
(*per curiam*, unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hargrove*,
701 F. 3d 156 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, *passim*

*United States v. Henderson*,
No. 17-11931 (11th Cir. 2018)
(*per curiam, unpublished*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Jarvis Lockett, et al.*,
Nos. 5:21-CR-00003, 00040 (M.D. Ga.),
*aff'd*, No. 22-10528 (11th Cir. 2024)
(*per curiam, unpublished*), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 50

*United States v. Medina-Villegas*,
700 F. 3d 580 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Melendez-Hiraldo*,
82 F.4th 48 (1st Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Meyers*,
No. 21-1381 (11th Cir. 2024)
(unreported, not for precedent) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 50

*United States v. Montero-Montero*,
817 F. 3d 35 (1st Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Padilla-Galarza*,
    990 F.3d 60, 91 (1st Cir. 2021)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 24

*United States v. Perez-Delgado*,
    99 F. 4th 13 (1st Cir. 2024).   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22, 29

*United States v. Rand*,
    93 F.4th 571(1st Cir. 2024)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

*United States v. Reyes-Correa*,
    81 F.4th 1 (1st Cir. 2023)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*United States v. Rivera-Berríos*,
    968 F.3d 130 (1st Cir. 2020)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*United States v.  Rivera-Morales*,
    961 F. 3d 1 (1st Cir. 2020)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23, 25

*United States v. Rodriguez*,
    525 F. 3d 8 (1ˢᵗ Cir. 2008)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   38

*United States v. Rodriguez-Monserrate*,
    22 F.4th 35 (1st Cir. 2021)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

*United States v. Santa-Soler*,
    985 F. 3d 93 (1st Cir. 2021)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*United States v. Vargas-Martinez*,
    15 F.4th 91 (1st Cir. 2021)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

**STATUTES**

7 U.S.C. §2156   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, *passim*

18 U.S.C. §49   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, *passim*

18 U.S.C. §371   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

18 U.S.C. 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. §3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, *passim*

18 U.S.C. §3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**United States Sentencing Guidelines**

U.S.S.G. §2E3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *passim*
      Application Note 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. §3E1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 3D1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*

U.S.S.G. §3D1.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

USSG §5G1.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, *passim*

**Other Authorities**

Cardon AD, Bailey MR, Bennett BT.
      *The Animal Welfare Act: from enactment to enforcement.*
      J Am Assoc Lab Anim Sci. 2012 May;51(3):301-5.
      PMID: 22776186; PMCID: PMC3358977. . . . . . . . . . . . . . . . . . . . . 43

Congressional Research Service,
      Legislative History of the Animal Welfare Act:
      In Brief July 14, 2022, available at:
      https://crsreports.congress.gov/R47180 . . . . . . . . . . . . . . . . . . . . . . 43

# STATEMENT OF JURISDICTION

This is an appeal from the sentence imposed in the District of Puerto Rico, following plea of guilty. Sentence was imposed on September 22, 2023, 2023, an initial Judgment entered on that date, an Amended Judgment later that day. Dockets (hereinafter "DKT") #105, 109.[1] On that same date an Amended Judgment was filed. DKT 109. A notice of appeal was filed as to Docket 105, entered on the docket as DKT # 107 on October 7; a corrected Notice of Appeal as to DKT 109 was then was filed on October 6, 2023. They appear in the Addendum. The Docket appears as at pages (AD-1-16) of the Appendix (hereinafter "APP"1-). This Court has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

---

[1] The following abbreviations are used throughout: "AD-#" refers to the page number of the Addendum, "APP-#" refers to a page number of the Appellant's Appendix, and "Sealed APP-#, of Appellant's Sealed Appendix. "DKT#" refers to the number assigned to a document in the district court's electronic docket. "SOR" refers to the Statement of Reasons, found in the Sealed Appendix. A Supplemental Appendix contains non-reported cases and/or relevant documents from them. It is referred to as "SUPP APP".

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

I.      Did the district judge commit procedural error by failing to explain the degree of variance from the correctly calculated Guidelines range of 12-19 months to 84-months?

II.     Did the variance from the Guidelines grouping principles result in a violation of the constitutional protection against Double Jeopardy?

III.    Was the sentence of 84 months substantively unreasonable, and did it create unwarranted disparity with sentences imposed upon others similarly situated charged with the same offense?

Mr. Casillas pled guilty to one count of conspiracy to violate the Animal

Welfare Act as it perains to dog fighting, and two counts of possessing two dogs for

that purpose in violation of 18 U.S.C. §49. [2] No co-conspirators or dates for the

_____

[2] 18 U.S.C. 49
Enforcement of animal fighting prohibitions. Whoever violates subsection (a), (b), (c), or (e) of section 26 of the Animal Welfare Act shall be fined under this title, imprisoned for not more than 5 years, or both, for each violation.

The Animal Welfare Act, 7 U.S.C. §2156, provides in relevant part:
 Animal fighting venture prohibition
(a) Sponsoring or exhibiting an animal in, attending, or causing an individual who has not attained the age of 16 to attend, an animal fighting venture
(1) Sponsoring or exhibiting
It shall be unlawful for any person to knowingly sponsor or exhibit an animal in an animal fighting venture.
(2) Attending or causing an individual who has not attained the age of 16 to attend
It shall be unlawful for any person to—
        (A) knowingly attend an animal fighting venture; or
        (B) knowingly cause an individual who has not attained the age of 16 to attend an animal fighting venture.
(b) Buying, selling, delivering, possessing, training, or transporting animals for participation in animal fighting venture.
It shall be unlawful for any person to knowingly sell, buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture.
(c) Use of Postal Service or other interstate instrumentality for promoting or furthering animal fighting venture
It shall be unlawful for any person to knowingly use the mail service of the United States Postal Service or any instrumentality of interstate commerce

conspiracy were alleged.

Mr. Casillas was ordered detained and ultimately detained without bail, contrary to.the recommendation Pretrial Services Report. DKT 76 at p. 6. He was a life-long resident of Puerto Rico who owned a home, real property and business. The 35-page "Motion to Detain Without Bail" alleged  an "extreme" risk of flight on the basis of his history of international travel in connection with dogfighting. It also warned that the 5-year statutory maximum was illusory, predicting a superseding indictment.

It was filed on November 23, 2022 (DKT 39), leaving Count One intact, but adding four new counts, one for possession of each of four dogs found on his property four days after his arrest DKT 39, APP 17-27 (Superseding Indictment)/ Defense motion to reopen the detention hearing (DKT 55) was rebuffed in February 2023. It found that Mr. Casillas' loss of 31 pounds and developing stage 2 hypertension, nosebleeds, colds and heavy coughing while sharing a cell about the size of a two person walk-in closet provided no reason to revisit the detention

------

for commercial speech for purposes of advertising an animal, or an instrument described in subsection (d), for use in an animal fighting venture, promoting or in any other manner furthering an animal fighting venture except as performed outside the limits of the States of the United States.

question because not relevant to risk of flight. DKT 76.

<u>The Plea Agreement</u>

A Plea Agreement (DKT 85) pursuant to stipulated facts was filed on May 3. DKT 85. It is found at APP 28-42. The Version of Facts is essentially a word-for-word reiteration of those in the relevant counts of the indictment. There was no agreement regarding the sentence. The prosecution agreed to dismiss two of the possession counts.

<u>The PSR (DKT 88)</u>

The PSR (DKT 88, Sealed APP at 1 - 23) confirmed that Mr. Casillas was 51 years old, married with adult children, had college studies, and vocational education. One of four siblings of "humble" origins (*Id.* at p. 12) like his parents, he ran a family pizza restaurant with his wife and son. His wife explained that the son's adult-onset psychiatric condition results behavior so erratic that they cannot have outside employees. Since Mr. Casillas' arrest she is managing the business and her son without his assistance. Sealed APP at 13-14.

The Offense Conduct section of the PSR tracked and amplified the Stipulated Facts attached to the Plea Agreement. None were contested. The "Offense Conduct" described at Sealed APP 4-8, included the following:

Mr. Casillas' involvement in the dogfighting world began when he was 17.

As part of Stone City Kennels, he bred, sold, conditioned dogs, entered them in fights, arranged and refereed fights in Puerto Rico and abroad, especially in the Dominican Republic and other Caribbean/Latin American countries where the practice continues to be both popular and legal. It was estimated that during 35 years, he had participated in a total of 150 fights, and was known in the dogfighting world as a breeder of champions.

In 2018, one of his dogs died as a result of injuries sustained in a fight. In a message, Mr. Casillas explained that although the fight was going well, the dog was injured on the nose and bled copiously. He said that in such circumstances, it was not his practice to stop the fight to "pick up the dog," and it died as the result of its injuries.

During 2019 and 2020, he offered to sell or sold dogs that had been tested in fights as long as 20 minutes .

In early 2019, he promoted a match scheduled in the Dominican Republic for August, and later that same year, offered to sell a dog with fighting pedigree to a buyer in Bogotá.

In 2020, he offered a two-year old for $5,000 that had been tested in fights of 5, 10 and 15 minutes. That same month, he offered the 20-minuted tested son of a champion for sale in Europe.

In July 2021 he traveled to the Dominican Republic to participate in a match in which his dogs lost.

At the end of September 2022, an undercover agent secured and recorded admissions to Mr. Casillas' participation in Stone City Kennels, in over 150 fights over a 35-year period in many jurisdictions, and that he currently had five dogs for sale or breeding with suitable lineages.

 The PSR also documented the condition of the four dogs found after his

arrest, charged in counts 2-5, including veterinary diagnoses, and treatment. At time

of the veterinary report, they were  described as healthy, affectionate and strong,

friendly and playful.  Sealed APP at 7.

The Guidelines Calculations were as follows:

| | |
|---|---|
| Base Offense Level: | 16 (U.S.S.G. §2E3.1) |
| Acceptance of responsibility: | - 3 (U.S.S.G. §3E1.1) |
| Adjusted Offense Level: | 13 |

PSR at p. 9, Sealed APP at 9.

| | |
|---|---|
| Criminal History: | I |
| Guideline Sentencing Range: | 12-18 months. |

U.S.S.G. §3D1.2(d) applied to group all three counts together. PSR at ¶38.

Offense Level of 13.

However, ¶¶111-112 proposed "Factors that may Warrant a Departure,"

citing Application Note 2 to USSG §2 E3.1.  ¶111 acknowledged that while the

base offense level itself contemplates "one of more violent fights between animals

and that a defeated animal often is severely injured in the fight, dies as a result of

the fight, or is killed afterwards." but Application Note 2 provides for a departure

based upon unusually large number of animals. The PSR cited *United States v.

Hackman*, 630 F.3d 1078 (8th Cir. 2011) and *United States v. Courtland*, 642 F3d

545 (7th Cir. 2011).

¶112 of the PSR cited Mr. Casillas' participation in 150 fights over 35 years, his practice of not removing dogs from a fight when severely injured, as illustrated by a March, 2018 fight after which a dog died, and his advertising a fight in April 2019.

Paragraphs ¶114-115 alluded to a "Sentence Outside of the Advisory Guideline System" as a variance, and pointed to the same facts in support of a variance, adding the fact that he also sending a dog to a match in the Dominican Republic in July 2021, and the condition of the dogs recovered from his property.

As Puerto Rico is participating in the testing of the Judiciary Sentencing Information database, the PSR included a report of national sentencing practices for persons sentenced under the same Guideline (U.S.S.G. §3E1.3) with the same total offense level (13) and Criminal History Category (I). DKT 88 at 21-22, Sealed APP at 22-23. It reveals that for all 38 defendants with Mr. Casillas' Guidelines calculations sentenced during FY2018-2022, the average length of sentence imposed was 16 months: 19% of the one imposed on Mr. Casillas.

<u>The Sentencing Memoranda</u>

**A.  The Defense**

The defense Sentencing Memorandum (DKT 90) included letters from

27 members of the community, including 16 from various generations of the family,

an employee and a teacher, attested to his caring and generous nature, his

contributions to and support from the community and his role in guiding and

supporting specific members of the family . DKT 90-3 at 16-17, 19, 21, 22, 25, 31.

One explicitly noted "[h]e has apologized to his family, friends, and anyone who

has been negatively affected by his actions", and confirmed his decision to abandon

the practice before his arrest ("Antonio was changing his life before this incident

happened."), as did his wife. He had told her that he felt he was too old to continue

dog fighting related activities. *Id*. at 32, 33.

It also documented hard-working nature and skills such as plumbing,

soldering, plastering, construction and the design and construction of swimming

pools. At 48, he studied and obtained license as a Refrigeration Expert license in

order to service his his restaurant and, when arrested was studying to obtain licenses

to enter the solar energy market. His wife said that Mr. Casillas had become so

exhausted keeping the restaurant going that he needed sleeping and anti-anxiety

medicine to sleep and had told her he knew he was too old to continue with the dogs. Sealed APP at 32-33 and 14.

<u>The Defense Guidelines calculation and recommended sentence</u>

The defense memo emphasized that Mr. Casillas' deep roots in the community and extensive family ties, his age (52), education and Criminal History Category (I) individually and collectively placed him in the category of offenders least likely to recidivate.

Acknowledging that Application Note 2 may apply, it argued that a two-level enhancement and sentence at the resulting GSR (Level 15, 18-24 months) would suffice. The memorandum cited a tradition of animal fighting in Puerto Rico leading to reluctant and inconsistent enforcement of the Animal Welfare Act, as evidenced by recent controversy regarding commercial public cockfighting.[3] A point adopted by the prosecution to seek exemplary punishment, in part, on the

---

[3] See, *Hernandez-Gotay v. United States*, 985 F. 3d 71 (1st Cir. 2021)(challenging an amendment to 7 U.S.C. § 2156(a)(2), (b) (2018) that terminated an exemption, under certain conditions, from the Animal Welfare Act prohibiting cockfighting in Puerto Rico and other jurisdictions where local law permitted, affirming *Club Gallístico de Puerto Rico Inc. v. United States*, 414 F. Supp. 3d 191 (D. P. R. 2019)(noting that until the passage of the Agriculture Improvement Act of 2018, the only jurisdictions that had not proscribed cockfights comprised the Commonwealth of Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands and the United States Virgin Islands).

faulty premise that there had been no prosecutions in Puerto Rico. *But see, United United States v. Ehbrin Castro-Correa*, 16-153 (D.P.R. 2017).

**B. The prosecution**

The prosecution's 124-page Sentencing Memorandum (DKT 94) follows a pattern, if not a template, for prosecutions in what are usually multi-defendant dog fighting cases, focused upon the nature and circumstances of the offense and, often related crimes ranging from illegal possession and firearms to wagering in violation of 18 U.S.C. §1955.[4] It pointed out that frequent upward variances led the Sentencing Commission to increase the Base offense Levels in 2016 (DKT 94 at 3), and urged the district court to follow others in imposing upward variances with

---

[4] 18 U.S.C. 1955 provides in pertinent part:
(a)Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
(b)As used in this section—
(1)"illegal gambling business" means a gambling business which—
(i)is a violation of the law of a State or political subdivision in which it is conducted;
(ii)involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
(iii)has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

overall sentences at or above the statutory maximum.[5] *Id*. at 4-5. While many upward variances were listed (and discussed below), many of them ranged between12 and 54 months. DKT 94 at p. 5.

Finally, in furtherance of a variance for general deterrence purposes, it emphasized both the cruelty inherent in the activity, and urged exemplary punishment due to special conditions in Puerto Rico where "dogfighting is an open secret", but not enforced, and its proximity to Caribbean countries where it is legal. *Id*. at 7-21  It decried the complicity of veterinarians in Puerto Rico, but charged none.

The prosecution Sentencing Memorandum included documentation of facts to which Mr. Casillas admitted in his guilty plea and/or were included in the PSR, such as his involvement in breeding, training, selling and using dogs for fighting in Puerto Rico, the Dominican Republic and other non-US jurisdictions, as well as photographs of his training regime sent to a potential customer, evidence of two of his dogs that died of injuries in a fight, and photographs of the dogs seized at his property several days after his arrest, charged in counts 2-5.

---

[5] As discussed *post*, sentences above the statutory maximum were imposed for violation of additional statutes.

Invoking Application Note 2, it sought an upward departure to 120 months—the equivalent of two consecutive statutory maximums, quoting from *United States v. Hargrove*, 701 F. 3d 156, 159 (4th Cir. 2012), discussed below. Its final argument, incongruent with both the facts of this case and its position that dog fighting was no enforced in Puerto Rico was:

> Given the limited law enforcement resources available for cases such as this, and the strain it places upon animal shelters called upon to care for the large number of dogs seized in these investigations, it is imperative that the sentences imposed in the few cases that are able to be brought send a strong message of deterrence.

DKT 94 at 118.

Appended to the Memorandum as Exhibit 1 was the *sua sponte* investigation of the phenomenon by the district judge in *United States v. Berry*, No. 3:09-cr-30101, 2010 WL 1882057 (S.D. Ill. May 11, 2010), *aff'd sub nom. United States v. Courtland*, 642 F.3d 545 (7th Cir. 2011)(a 7-defendant case resulting in affirmance of upwardly variant sentences of 16, 18 and 24 months), discussed *post*.

Additional uncontested exhibits included transcripts of conversations with uncharged confederates, including veterinarians, about travel certificates, treatment and medications, offers to sell and ship dogs abroad, feeding and training regimes, and his reputation (i.e., that of his dogs and those with their pedigree) in the

dogfighting world. Exhibit 4 illustrates the continuity of public cockfighting organizations in Puerto Rico, apparently to illustrate the need for stronger enforcement of the Animal Welfare Law generally in Puerto Rico.

Finally the prosecution announced its intent to present Douglas Bridges as an expert in enforcement of animal welfare law. DKT 95. His CV reflected experience *United States v. Jermaine Hadley*, N.D. Fla. Nos. 21-12082, 21-12083 (11th Cir. 2021)(*per curiam*, unpublished)[6], and in *United States v. Jarvis Lockett*, No. 22-10528 (11th Cir. 2024)(affirming sentence of 60 months on animal welfare count, concurrent to those of 360 and 240 for drug dealing, discussed *post*).

### c. The defense reply

The pre-hearing skirmish did not end there. At DKT 100, the defense acknowledged Application Note 2 of §2E3.1, but argued that, if applied, the degree of departure proposed by the prosecution ("900%) was unreasonable. *Id.*, at p. 2, distinguished cases cited in DKT 94, and citing *Castro-Correa*, *supra*.[7]

---

[6] A sentence largely driven by drugs and guns. See SUPP APP at 48-51

[7] An unreported opinion and order denying a motion to suppress. Castro attempted to take 6 dogs to the Dominican Republic to fight; 25 dogs in deplorable conditions removed from his home. He received a 21 month sentence. (concurrent low-end-of-the-Guidelines sentences of 21 months).

**The Sentencing Hearing**

Agent Bridges was based in Georgia. His testimony was the focus of a six-hour hearing. He established that he "had a host of referrals" from local law enforcement agencies in South Carolina, Georgia, Florida and the Virgin Islands, but none from Puerto Rico (DKT 119 at 46, 156, APP at 89, 199). He was aware of no local law enforcement of the statute.

He provided background about the activity generally, including that dogs don't need to be taught to fight (Transcript of Sentencing Hearing, DKT 119 at 50-51, APP at 93-94); certain breeds are naturally aggressive toward perceived threats–such as dogs within certain distance and/or competing for food. What those condition them for fighting do, is enhance their cardiovascular fitness and muscle strength. *Id.*. Trainers develop and document routines for diet, exercise and medications.

He explained how matches are organized and carried out, and that they end either when a dog dies, the dogs go back to their corners (scratch lines) and one refuses to go back to fight, or an owner takes the dog out of the fight ("pick up the dog," resulting in a forfeit. *Id*. at 69-70, APP 112-13.

Mr. Casillas' Stone City Kennels came to his attention he saw it named in a

Facebook birthday party invitation sent out to persons or kennels of status in the field. The celebrant was famous for dogfighting, had been arrested many times, but, to Bridges' expressed frustration, never convicted. *Id*. at 64, APP107.  Recordings and videos previously submitted as more thn 30 exhibits to the sentencing memorandum (DKT 94)  were played to document the renown of Mr. Casillas and his dogs illustrating the length of his participation in Stone City Kennels. Numerous exchanges about dogs he bred and trained, championships,  and fights were entered on the record. In one Facebook exchange, while talking about a dog who died as the result of a fight, Mr. Casillas said, (as translated) "I don't pick up," *Id*. at 99, APP at 142.

Bridges interpreted it mean that it was Mr. Casillas' regular practice not to take the dog out of a fight when seriously injured, implying that he would always  let a dog die rather than forfeit the fight, and opined that this was uncommon. Sent TR at 99-101, APP 142-44 He did not mention the cruel execution practices documented in other cases, discussed below.

After a short break after about three hours of testimony, the hearing resumed with additional uncontested evidence of Mr. Casillas' sales, and another dog that died in a fight in 2021. *Id*. at 117-135, APP at 160-178. Finally, the prosecutor

elicited the opinion that Mr. Casilla's had a longer career than all but one other dog fighter known to Bridges, and reiterated that it was very uncommon for one not to pick up a dog. The parties skirmished over the meaning of the term *(Id.* at 138-144, APP at 81-187), but the thrust of the defense was the disparity between the enhanced sentence sought here (120 months) and, on the one hand, the Guidelines, and, or the other, sentences meted out in the dogfighting cases relied upon by the prosecution.

Mr. Casilla's allocuted, asking forgiveness from his wife, and explaining that he had thought that dogfighting, like cockfighting, was a sport in Puerto Rico. However, he explained, under conditions of a 20-hour a day general lockdown during his pretrial detention, he had taken to reading the Bible and now knew "that my actions were bad." *Id.* at 171, APP 214. At the time of his arrest, he had decided to sell two last dogs and get out of what he referred to as "the sport." *Id.*.

The Sentence

Those last two words caused the sentencing judge to conclude that Mr. Casillas had not accepted responsibility. However, because she did not place it in the context of any Guidelines concepts, this error is not separately addressed . *Id.* At 172, 177, APP 215-220, and DKT 106 (SOR at p. 4 (Sealed APP at 24-28).

Indeed, the Court accepted the the Guidelines calculations in the PSR as

correct insofar as they reflected the nature and circumstances of the offense *(id*, at

179, APP 222, and made no contrary finding or comment as to any aspect of the

Guidelines as applied in the PSR. After reciting some biographical basics, and a

Criminal History Category of I (but describing this as representing his fifth arrest

and third conviction) *(id.* at 178, APP 273),[8] the judge turned to the variance. Citing

Application Note 2, she identified the following factors:

•over 150 fights over 35 years
•national and international prominence
•practice of not picking up dogs, allowing two dogs to die
•24 fights in one 2019 match, deemed unprecedented by the expert.

A sentence of 36 months--double the top of the GSR) was imposed on Count

One (conspiracy to violate the AWA). On each of Counts Two and Five (possession

of two dogs for AWA purposes), an above-Guidelines sentence of 24 months was

imposed. All three sentences were imposed to run consecutively, for a total  of 84

months– two years over the statutory maximum for 18 U.S.C. §49, and multiples of

the national average for those convicted of this offense in the same Criminal History

--------

[8] At pp. 10-12 the PSR reports then 16-year old charges for possessing a box of bullets and conspiracy to possess controlled substances for which he successfully completed 2 years of probation, a two-decades old plea to resisting/obstructing public authority (in connection with traffic offenses, no sentence reported), and 2019 dismissed charges relating to an altercation with his son. Sealed APP at 10-12.

Category.

The judge rejected the recommended Guidelines for this offense as

"irrational." *Id*. 179-80, APP 224-335, quoting *Hargrove*, *supra*, :

> other than the criminal dog fighters in America, every other person in America
> would be shocked beyond belief that you could do what the defendant did and
> come out with a federal sentence of 12-18 months."

701 F.3d 156, 761 (4th Cir. 2012), as she did in the Statement of Reasons (DKT 105,

SEALED APP at 27). Other than revulsion and repudiation of the offense, there was

no explanation for the degree of the variance.

## SUMMARY OF THE ARGUMENT

The prosecution set out to secure exemplary punishment for Mr. Casillas, at least in part, in order to make up for decades of failure to enforce the Animal Welfare Act ("AWA") with respect to dog fighting in  Puerto Rico. The resulting sentence is two years above the statutory maximum for violation of 18 U.S.C. §49, and between 550% and 700% of the correctly calculated Guidelines.

It is procedurally and substantively unreasonable.

It is procedurally unreasonable because the sentencing judge failed to explain the reason for upward variance of this magnitude.  An upwardly variant sentence requires a "heightened" degree of explanation. *United States v. Padilla-Galarza*, 990 F.3d 60, 91 (1st Cir. 2021), especially when the variance is extreme.

Nor was there any explanation for the rejection of structural aspects of the Guidelines, such as its principles of grouping principles (U.S.S.G. §§ 3D1.1, 3D1.2(b) and (d), and the recommendation of concurrent sentences for grouped offenses (USSG 5G1.2(d)) designed to avoid violation of the Double Jeopardy protection against being punished twice for the same offense.

That happened here. Imposing three consecutive sentences for what is

essentially a single offense, two charging the same statutory violation at the same time and place, violates the Fifth Amendment protection against Double Jeopardy. *See, e.g., United States v. García Torres*, 341 F.3d 61, 75 (1st Cir. 2003); *Bell v. United States*, 349 U.S. 81 (1955).

Finally, the sentence of 7 years for this offense on this 51-year-old man with deep family and community roots with no significant criminal history is substantively unreasonable. While general deterrence is a legitimate objective, an extraordinarily harsh sentence on one person is neither an effctive nor fair means of accomplishing it. The sentence is both greater than necessary to satisfy the legitimate objectives of 18 U.S.C. §3553(a), and creates and unwarranted disparity between Mr. Casillas and national norms, whether measured by the Sentencing Commission's five year statistics, or in comparison to sentences imposed in other cases involving multi-defendant large-scale, dog-fighting conspiracies.

**The Seven Year Sentence, more than five and a half times greater than that recommended by the Guidelines and the national average is both Procedurally and Substantively and Unreasonable**.

In the same paragraph affirming the federal judicial tradition of considering "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," the Supreme Court acknowledged that the Guidelines were designed to provide "uniformity, predictability, and a degree of detachment lacking in our earlier system." *Koon v. United States*, 518 US 81, 113 (1996).

This case illustrates the importance of each of objectives, and the dangers of allowing moral outrage to overcome them. The cruelty inherent in organized dog fighting is why it has been made a federal offense. It also makes it inimical to dispassionate consideration by anyone who has ever loved a dog.

*Standard of Review*

Sentence review involves two steps. *United States v. Colón-Cordero*, 91 F.4th 41, 48 (1st Cir. 2024) and *United States v. Perez-Delgado*, 99 F. 4th 13 (1st Cir. 2024). First, procedural errors such as "failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range,"

are reviewed. *Gall v. United States*, 552 U.S. 38, 51, (2007);  *United States v. Clogston*, 662 F.3d 588, 590 (1st Cir. 2011). District judges are free to depart or vary from the Guidelines' recommendations, *Kimbrough v. United States*, 552 U.S. 85, 107 (2007) subject to abuse of discretion review.

Upon a finding of significant procedural error, the review ends and the case goes back to the district court. A challenge to the adequacy of the explanation for an upward variance is a claim of procedural error. *United States v. Santa-Soler*, 985 F. 3d 93 (1st Cir. 2021).

If none are found, the inquiry moves to the substantive reasonableness of the sentence imposed. *United States v.  Rivera-Morales*, 961 F. 3d 1 (1st Cir. 2020), citing *United States v. Flores-Machicote*, 706 F.3d 16, 20 (1st Cir. 2013).A variable abuse of discretion standard applies to preserved challenges to the substantive reasonableness of a sentence. *United States v. Vargas-Martinez*, 15 F.4th 91, 102 (1st Cir. 2021).  When the challenge is to findings of fact, clear error must be shown; when it concerns questions of law, it is *de novo*. *Rivera Morales* at 15. The end result must be a plausible rationale and a defensible result. *United States v. Breton*, 740 F.3d 1 (1st Cir. 2014).

Any claim of error not lodged below requires an appellant to show plain error,

that is, that an error occurred which was clear or obvious and that it both affected

appellant's substantial rights, and seriously impaired the fairness, integrity, or public

reputation of judicial proceedings." *United States v. Padilla-Galarza*, 990 F.3d 60,

73-74 (1st Cir. 2021); *United States v. Montero-Montero*, 817 F. 3d 35, 37 (1st Cir.

2016), quoting *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir.2001). An error is

"clear or obvious" when there is controlling precedent resolving the disputed issue in

his favor.  *United States v. Delgado-Sánchez*, 849 41 F.3d 1, 10-11 (1st Cir. 2017).

I.    **The District Court failed to explain the reasons for the extent of its variance–not a few upward steps, but a multiplier**.

This Court has made clear that what suffices for any sentence within a correctly-calculated Guideline requires less explanation than one on either side of its range, and that the farther the sentence departs (by any name) from that range, the more developed the explanation must be. "Just how much more depends on the degree of the variance. The more the sentencing court decides to vary, the more it needs to explain." *Pérez Delgado, supa* at 21; *United States v. Reyes-Correa*, 81 F.4th 1, 10 (1st Cir. 2023).

Reasons for the degree of the variance must be explained. *United States v. Rivera Morales*, supra at 401; *United States v. Field*, 858 F.3d 24, 31 (1st Cir. 2017)(a variant sentence "requires . . a somewhat more detailed justification, commensurate with the extent of the variance)", U*nited States v. Del Valle-Rodríguez,* 761 F.3d 171, 177 (1st Cir. 2014)("the greater a deviation from the GSR, the more compelling the sentencing court's justification must be"); *United States v. Rivera-Berríos*, 968 F.3d 130, 136 (1st Cir. 2020).

One of the principle objectives of the Guidelines was to reduce unwarranted sentencing disparities. Insufficiently explained variances make it difficult to

distinguish differences warranted by facts relevant to the offense and the offender from those that are unwarranted.

Procedural requirements such as announcing the reasons for the degree of departure or extent of upward variance are also meant to avoid substantive error, such as also occurred here. The need to explain the rationale for an upward departure or variance of at least 14 levels from a Level 13 is obvious.[9] Guidelines aside, so is the need to explain a total sentence that exceeds by two years the statutory maximum for the charged conspiracy when the additional counts are merely specific instances within it, and the consecutive sentences punish possession of two dogs at the same property on the same day.

The Explanation Provided

The Statement of Reasons (DKT 106) is designed for this purpose. The one here repeats the core of the Court's rationale recited in open court. It acknowledges that the court imposed a variant sentence outside the Guidelines. *Id*. at p. 1. At p. 3, it establishes that this was at the prosecution's request based upon "the nature and circumstances of the offense," and the history and characteristics of the defendant,

---

[9] A GSR of 13 has a sentencing range of 12-18 months; a sentence of 84 months for a persion with a CHC of I is at the high end of a Level 27 (70-87 months).

but none of the specifics reasons within either category is identified. Sealed APP at

p. 26.  Other general 3553 factors indicated are:

> ☒ To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for
>
> the offense (18 U.S.C. § 3553(a)(2)(A))
>
> ☒ To afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
>
> ☒ To protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))

This may explain why the Court decided to vary, but not what facts about Mr.

Casillas she relied upon, nor the degree of the variance. Nor do any of the

accompanying narrative facts. They simply reiterate the disagreement and repeat

some biographical facts.

At the hearing, acknowledges the defense question  "how much" of an

increment was warranted (DKT 119 at 181, APP at 224). The Court answered that

the facts here were "extreme" and quoted the judge in

*Hargrove*, *supra* (decrying the baseline Guideline, then at 06 months as "irrational"

and declaring that everyone "other than the criminal dogfighter" would be shocked

by imposition of the [PSR-] recommended Guideline" *of 10-16 months. Id*. at 182.[10]

The defense did not challenge the invocation of Application Note 2 to

_____

[10]  As discussed post, there, the judge imposed (and explained) a sentence
that varied upward from the Court's calculated GSR of 40-51 months to 60 ),
*Hargrove*, 701 F.3d at 160.

U.S.S.G. §2E3.1. In the district court, counsel labored to persuade the judge that *the degree* of departure or variance proposed by the prosecution was excessive and insisted that it would create an unwarranted disparity between the sentence here and those cited by the prosecution in its Memorandum and at the hearing, such as those involving drugs and/or guns, extensive criminal history and prior AWA convictions. *See*, DKT 119 at 137, 150-159, APP 179, 193-212.

To the extent the district judge explained why she varied, it was because she thought the Guideline "irrational". The perceived "irrationality" extended to reliance upon Application Note 2 to §2E3.1, as suggested in the PSR, upon a finding of "exceptional cruelty", or engagement on an exceptional scale. *See* SOR.[11] The decisions in *Hargrove*, *supra*, or *Berry*, *supra*, demonstrate that this judge is not

---

[11] Application Note 2 provides:

**Upward Departure Provision.**—The base offense levels provided for animal fighting ventures in subsection (a)(1) and (a)(3) reflect that an animal fighting venture involves one or more violent fights between animals and that a defeated animal often is severely injured in the fight, dies as a result of the fight, or is killed afterward. Nonetheless, there may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. In such a case, an upward departure may be warranted. For example, an upward departure may be warranted if (A) the offense involved *extraordinary cruelty* to an animal beyond the violence inherent in such a venture (*such as by killing an animal in a way that prolongs the suffering of the animal*); or (B) the offense involved animal fighting on an *exceptional scale (such as an offense involving an unusually large number of animals)*.

alone in her repudiation of the GSR set for this offense. But that does not explain why she declined to apply the vehicle provided for upward departures (as they did) and jettison the Guidelines structure entirely.

Rejection of a Guideline as "irrational" implies a more rational basis for the alternative adopted, as was the case in many of the decisions rejecting the crack guidelines rooted in a 100-1 ratio to cocaine. The record here provides no more rational basis.

The district court listed the facts it found particularly disturbing, but (a) most are generic, inherent in the offense and/or (2) authorized Application Note 2. Nowhere is *the enormous degree* of the variance discussed. To a defendant, or a casual spectator, it would appear that once a judge disagrees with where the Sentencing Commission has set a Guideline, the sky is the limit.

The requirement for adequate explanation is not arbitrary; it is designed not only to allow judicial review, but also contributes to transparency of, and promotes respect for, judicial proceedings and a legal system currently under unprecedented attack. *Pérez Delgado*, 99 F.4th 19 at 21, quoting *Gall* 552 U.S. at 50 ("allow[s] for meaningful appellate review" and "promote[s] the perception of fair sentencing."

Disagreement with a GSR allows for departures or variant sentences, but does

not implicitly authorize departing from structural principles of the Guidelines without explanation. These include the notion that sentences, wherever fixed, should be graduated step-wise, and concepts such as grouping to avoid unwarranted double punishment, discussed *post*.

*The explanation*

By way of explaining the sentence she was about to impose, the judge explicitly addressed the defense question of "[h]ow much of a departure is necessary . . . ?" (DKT 119 at 165, APP 224), quoting from the defense memorandum (DKT 100 at 2-3). But she did so only to pre-emptively note that the fact that "a variance sentence deviates significantly from the advisory Guidelines range ... does not alone render it presumptively unreasonable," quoting *United States v. Rivera-Santana*, 668 F. 3d 95, 106 (4th Cir. 2012).

She answered the defendant's question about "how much . . ." by stating that the facts of this case were "extreme" and immediately verred away from this case to reiterate the view from Hargrove that no one but "criminal dog fighters" could believe what Mr. Hargrove did and receive a Guidelines sentence of 12-18 months.[12]

---

[12] Mr. Hargrove, "a legend" in the dogfighting world, had up to 250 dogs at a time; 36 were seized at the time of his arrest–all had to be destroyed. He had jumper cables to electrocute dogs, and prior animal welfare convictions.

DKT 119 at 182, APP at 225. The fact that this sentence also found its way into the Statement of Reasons reveals that such a view was the driving force behind Mr. Casillas' sentence. Mr. Casillas did not do what Mr. Hargove did, and this message is directed at the Sentencing Commission, not the defendant.

It is one thing to explain dissatisfaction with sentencing ranges to those with the power to set them, and another to explain to the defendant, the public, and this Court why a particular person warrants seven years in prison, instead of the recommended year and a half.

Most of the fact-based reasons cited for the upward variance (DKT 119 at 182-183, APP 225-227) are, in fact, what Application Note 2 qualifies as routine practices or consequences of the offense. The fact that they are, explains why the district judge disagreed with the GSR, but not the degree of variance.

As discussed under "Substantive Reasonableness", Mr. Casillas was involved from his teenage years, making him a person of success and renown in a field of prohibited activity. So Application Note 2, which authorizes an enhanced sentence for extensive involvement, could have been applied. Its rejection of suggests that standardless general deterrence was the driving force, and a rejection of the very concept that Mr. Casillas' sentence should be compared to others sentenced for the same offense.

Disagreement with where U.S.S.G. §2E3.1(a) sets the GSR does not mean that a sentencing judge need not explain the degree of variance by something specific to the particular defendant that makes both the GSR and the Guidelines as a whole, irrelevant. The Guidelines represent an effort on the part of the Sentencing Commission to make the sentencing process more rational and transparent. Those objectives survive policy disagreements about how many months is too few. Ignoring them frustrates those objectives, as well as judicial review and, ultimately both fairness and public trust in the federal sentencing process.

The cruelty of the enterprise and condition of the dogs found after Mr. Casillas' arrest and the need for general deterrence were clearly defining factors. Transcript at 161-164, but this is entirely inadequate to explain the degree of upward variance, resulting in a total sentence two years over the statutory maximum for what was, in reality, one offense.

In the world of dogfighting, Mr. Casillas had a long history, was well-known and respected, the evidence of his activity barely qualifies as "extraordinary" under Application Note 2, which the district court brushed aside, signaling something other than a policy disagreement with the Guideline reasons such as discussed in *Kimbrough, supra*. Here there was no discussion of a lack of empirical evidence or objective basis

for how U.S.S.G. §2E1.3 established the base offense level and relevant enhancements or departures. Instead, the "guideline" was established by the highest sentences the prosecution could cite–without examination of why those sentences were imposed upon those defendants.

The failure to explain a sentence that is not only seven times the bottom of the admittedly correct GSR, but also exceeds or evades the statutory maximum for the single offense committed reverts to a regime of sentencing by absolute discretion. In such a system, while reviewing courts may be able to glean from the record one or more of the reasons extraordinary sentence may have been imposed, there is no principled basis by which to measure its reasonableness. As a result, they must either accept the decision, or substitute that of their own to reject it.

Appellee may argue that the lack of objection means that this argument is subject to plain error. There was no realistic opportunity to object–the sentence was pronounced at 7: 45 p.m. after a six-hour hearing and an apparent hypoglycemic episode on the part of defense counsel. DKT 119 at 176, APP at 219. And the record makes clear that a request for an explanation would have been futile. In the alternative, this issue means that plain error standard because the explanation of the reason for the variance is entirely incommensurate with its extent. This Court has repeatedly and explicitly emphasized the importance of explanation in such circumstances, and the lack of one here prejudiced

Mr. Casilla's right, at least in part by imposing double punishment. As indicated above, the failure to explain the extent of extremely variant sentences diminishes the transparency and confidence of the public in judicial proceedings.

## II.  THE SENTENCE WAS UNREASONABLE BECAUSE IT IGNORED THE GUIDELINES CONCEPT OF GROUPING AND VIOLATED THE CONSTITUTIONAL PROTECTION AGAINST DOUBLE JEOPARDY.

The overall sentence here exceeds the statutory maximum by 24 months. It was achieved by imposing sentence of 45 months on Count One, and a 24-month sentence on each of Counts Three and Five.  All three counts were then ordered to be served consecutively. What's wrong with that?  There was only one offense.

The Count One conspiracy to violate 18 U.S.C. §49, charged as a violation of 18 U.S.C. §371 logically and explicitly encompassed the possession of the dogs charged in Counts of 3 and 5. The Guidelines establish a principle for dealing with multiple counts. Chapter 3 Part D "Multiple Counts." The PSR correctly grouped the three offenses  in a single group because they involve "substantially the same harm". U.S.S.G. §3D1.2–in this case under §3D1.2(d).  The prosecution did not object, and the Court found the PSR's application of the Guidelines to be correct. DKT 119 at 177 APP 320. In such cases, USSG 5G1.2(d) requires imposition of concurrent, not consecutive sentences for grouped counts. *United States v. García Torres*, *supra*.[13]

_____

[13] §3D1.2(d)
When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

One charged a conspiracy to violate the Animal Welfare Act (7 U.S.C. §2156(a) and (b)). Among the objectives of the conspiracy was possessing animals for use in an animal fighting venture. DKT 39 at 1, APP 17. Among the overt acts alleged is possessing the four dogs found at his property on October 6, 2022. Each of those dogs is charged as a separate violation of 18 U.S.C. §1756(b).  DKT 39 at 8-10, APP at 24-26. There was but one violation of the Animal Welfare Act.

Among the structural features of the Guidelines discarded are relevant here are those embodied in USSG §3D1.1 (the "grouping" principles) and §5G1.2 (a)-(d)(governing concurrent and consecutive sentences). They were properly applied in the Presentence Report, which was approved by the parties and the district judge.

Both the Introductory Commentary and the Application Notes emphasize that "closely intertwined"conduct charged in multiple counts would not ordinarily warrant increased punishment". Ch. 3, Part D, Introductory Commentary (Nov. 1, 2021 Guidelines Manual).  Thus offenses that 'represent essentially the same type of wrongful conduct with the same ultimate harm" are to be grouped together.
The objective is "to limit the significance of the formal charging decision and to prevent multiple punishments." *Id*.  In other words, to limit prosecutorial discretion avoid Double Jeopardy problems.

Those sections are not Guidelines gee-gaws. They represent, at least in part, an attempt to integrate the protection against Double Jeopardy into a comprehensive system that too frequently deprived judges of the discretion essential to sentencing. But discretion stops at the border of the Constitution which, in pertinent part, prohibits the imposition of two punishments for the same offense. That error could have been avoided had the judge explained her intended sentence before 7:45 p.m. when it was imposed, and reviewed in open court why she believed that not just the GSR, but other Guidelines principles as well, were not applicable to this case. Because §§3D1.2 and 5G1.1 are Guidelines principles, the sentencer may vary from them, but the discretion to do so does not excuse the requirement to explain the rationale.

<u>The Consecutive Sentences Violate the Double Jeopardy Clause</u>

What the Guidelines were designed to avoid happened here, most directly with respect to Counts 2 and 5, which charge precisely the same statutory violation. This Court has long acknowledged, and been required to reiterate, that "courts may not impose multiple punishments for what is essentially the same offense. *Allen v. Att'y Gen. of Me.*, 80 F.3d 569, 572 & n. 3 (1st Cir.1996)." *United States v. Medina-Villegas*, 700 F. 3d 580 (1st Cir. 2012)(cleaned up). Perhaps most recently in *United States v. Almonte-Nunez*, 963 F. 3d 58, 68 (1st Cir. 2020):

> The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same

offense after conviction. And it protects against multiple punishments for the same offense.'" citing *Brown v. Ohio*, 432 U.S. 161, 165, (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, (1969).

This Court applied the principle to guns in *United States v. Rodriguez*, 525 F. 3d 8 (1st Cir. 2008); on plain error review, this Court reprised the position, adopted by the majority of circuits, that the imposition of multiple consecutive sentences under 18 U.S.C. §924(c) for using multiple weapons during a single predicate crime "would impinge upon fundamental `double jeopardy' principles'" , citing *United States v. Pena-Lora*, 225 F. 3d 17, at 32.d 17, 32 (1st Cir.2000)(citing cases from 8 other circuits). The two dogs in Counts 2 and 5 wwere multiple animals used to commit a single violation of the Animal Welfare Act

The defendant in *United States v. Bell, supra* at p.21, was charged in two separate counts of violating 18 U.S.C., §2421, which, in pertinent part, then made it an offense to knowingly transport "any woman or girl. . . for the purpose of prostitution or debauchery." Bell pled guilty to transporting two women for the prohibited purpose on the trip, in the same car, and was sentenced to two and a half years on each count, to be served consecutively. He appealed.

The Supreme Court held that because Congress prohibited the transportation of "any" woman or girl (today the statute reads "individual") for a prohibited purpose, the "unit of prosecution" was the transportation, not the individual transported. Because two

women were transported in the same car on the same trip, there was but one offense.

Here, in relevant part Counts 2 and 5 charge violation of 7 U.S.C. §2156(b). 18 U.s.C. §49 enforces that section which decrees: "It shall be unlawful for any person to knowingly sell, buy, possess, train, transport, deliver, or receive any animal" for the prohibited purpose of fighting." It prohibits one sale, purchase, possession or transportation of two animals as part of one transaction taking place at the same time and place.

In both cases, the transportation of "any" of the specified "objects" for a prohibited purpose violates the statute. Because the unit of prosecution is "any animal", the possession of 120 dogs in Courtland, *supra* at p. 7, did not result in 120 counts. The prosecution could charge each dog in a separate count, but Mr. Casillas may only be punished once for all the dogs possessed on October 6, 2021.

Under double jeopardy principles, possession of the several items of same type of contraband at the same time in the same place may be separately charged as violations of the same statute, but not punished twice–i.e., by consecutive sentences.

This issue was not raised below. The PSR gave no warning. Nor did the Court. It occurred only as sentence was pronounced at 7:45 after six hours of hearing. It is, nonetheless, absolutely clear, both from the face of the record and as a matter of law. It affects Mr. Casilla's substantial rights by adding two years to an already extraordinarily

long sentence. Failure to correct it would disserve the public reputation of the court for fairness. As a result of this error Mr, Casilla's sentence on either Count Two or Count 5 must be vacated, and an amended judgment entered.

III.    THE SEVEN YEAR SENTENCE IS  SUBSTANTIVELY UNREASONABLE.

This Court has "consistently held that by arguing for a shorter sentence before the district court, a defendant preserves a challenge to the substantive reasonableness of his sentence on appeal." *United States v. Melendez-Hiraldo*, 82 F.4th 48, 56 (1st Cir. 2023); *Holguin-Hernandez v. United States*, ___ U.S. ___, 140 S. Ct. 762, 766,  (2020); *United States v. Rand*, 93 F.4th 571, 579 (1st Cir. 2024); *United States v. Rodriguez-Monserrate*, 22 F.4th 35, 40-41 (1st Cir. 2021).

Substantively, all sentences, regardless of offense, offender, or how calculated, must ultimately meet the parsimony principle of 18 U.S.S.C. §3553(a)–that is, in general the sentence must be sufficient to satisfy the objectives of sentencing, §3553(a)(2)(A) in light of the nature and circumstances of the offense and the history and characteristics of the defendant (3353(a)(1). And impose a sentence that is no greater the result of consideration of all of them. §3553(a)(2)(A).

A. The Zeal to Provide General Deterrence Resulted in an Excessive Sentence.

Congress has chosen to make some forms of animal mistreatment criminal (*e.g.*, dog and cock fighting), while exempting others (*e.g.*, dog and horse racing). Enforcement of Congressional decisions is left to the discretion of the executive branch. The prosecution argued below that its own failure to prosecute Mr. Casillas,

veterinarians and others for violations of the Animal Welfare Law in Puerto Rico over 35 years warranted exemplary punishment for him. (DKT 119 at 155, APP at 198). But it is also why Mr. Casillas came of age (he started at age 17, in 1988), and carried out his activities in an environment immune to the cruelty it now seeks to stamp out.

A bit of history helps to put things in perspective. The Guidelines initially established minimal punishment for this offense (0-6 months), reflecting not its impact on animals, but its relatively wide acceptance in certain cultures and sectors of society where raising, training, breeding and swapping dogs for herding, hunting, and other purposes was part of daily life. Dog fighting, while less common, was among them. History reveals that what animals were protected why and when is evolving, but somewhat arbitrary.

The Animal Welfare Act and its evolving regulations represent an expanding consciousness of the responsibilities of our species towards others with whom we share the planet. Originally titled the 'Laboratory Animal Welfare Act,' since its effective date in 1967, in 1970 its reach was been extended outside the laboratory to authorize the Secretary of Agriculture to promulgate regulations for the "humane" treatment of all warm-blooded animals used in exhibition or sold at auction. It was now the "Animal Welfare Act." But rats, mice, birds, horses, and farm animals  were no longer defined as animals. Animal fighting was first prohibited six years later. Animal Welfare Act

Amendments of 1976. PL 94-279. Approved 22 April 1976.[14]  Fast forward through various amendments and re-definitions of "animal".

The Animal Fighting Prohibition Enforcement Act was passed 2007; it increased penalties for animal fighting and prohibited use of certain implements in cockfighting. In 2008, P.L. 110-246, Food, Conservation, and Energy Act of 2008 Section 14207 statute, titled "Prohibition of Dog Fighting Ventures", made various changes to 7 U.S.C. §1256 and, in response to the conviction of football star Michael Vick,  increased the penalty for dogfighting from 3 to 5 years.[15]

That year, Article 8 of Puerto Rico's Law 154 of August 4, 2008 outlawed animal fighting in general, other than cockfighting, which was regulated, not outlawed.  But, as the prosecution expert testified, it was not enforced by local authorities.The lack of enforcement–both federal and local–allowed Mr. Casillas to come before the court with a 35-year history. It is not reasonable to use that inaction on the part of authorities as a basis for extraordinary punishment now.

---

[14]  *See, e.g.*, Cardon AD, Bailey MR, Bennett BT. *The Animal Welfare Act: from enactment to enforcement*. J AM ASSOC LAB ANIM SCI. 2012 May;51(3):301-5. PMID: 22776186; PMCID: PMC3358977.

[15] See generally, Congressional Research Service, Legislative History of the Animal Welfare Act: In Brief July 14, 2022, available at: https://crsreports.congress.gov/R47180. Last viewed 6/21/2024.

The evidence presented below reflected intolerable cruelty to animals. But within the context of this offense, it was ordinary, not extraordinary cruelty. The prosecution emphasized Mr. Casillas' statement that it was not his practice to "pick up" a dog, and the fact that two of his dogs died of wounds as the result of a fight. These facts illustrate inherent cruelty that warrants making what was once a popular entertainment a crime, rather than extraordinary, gratuitous cruelty.

Dogfighting is inherently cruel–it is, as Note 2 explicitly indicates, not at all exceptional for dogs to be injured or even die as the result of a fight–, so a variance is authorized when there is gratuitous, extraordinary cruelty over and above that inherent in the activity, such as the crude executions by electrocution, bludgeoning, and drowning practiced in the cases cited below, some of which were cited by the prosecution in support of its variance request.[16]

---

[16] *See, e.g., United States v. Anderson et al*., 3:13-cr-100 (M.D. Ala. 2014, WL 6055384 (E.D. N. C. Dec. 7, 2019),(Anderson electrocuted dogs; 70 of his 114 dogs had to be destroyed; co-defendant Dermott had jumper cables to electrocute dogs, codefendant Phillips drowned and hung dogs) SUPP APP at 48-51; *Berry, supra* (sentencing memo attached below as Exhibit 1 to DKT 94)*,* defendant Addison electrocuted dogs in front of crowd afteprafight of an hour and 19 minutes); *Hackman*, *supra* (defendant *Kiriakidis* helped electrocute dog defendants bludgeoned, drowned and hung underperforming dogs; *Hargrove*, *supra* (jumper cables used to electrocute dogs seized); *United States v. Meyers*, No. 21-1381 (11th Cir. 2024) (unreported)(case remanded because defendant challenged finding that he hung a dog). (SUPP APP at 53) .

In the context of reported dog fighting cases, the "deplorable conditions" cited by the judge) in which the four dogs were found several days after Mr. Casillas' arrest represented neglect, not extraordinary cruelty. DKT 119 at 184, APP at 227. They all needed veterinary treatment, but they all recovered, and none was so ferocious it was not suitable for placement, which is true in the overwhelming number of variant cases identified in Note 12 below.

Application Note 2 also authorizes a variance for fighting on an "exceptional scale" such as involving an unusually large number of animals. The fact that Mr. Casillas had only four dogs confirms that he was no longer actively fighting, and is, in the context of these cases, an exceptionally reduced number."[P]rofessional handlers will keep a larger number of dogs, usually fifty or more at a time." *Berry, supra* (30 dogs seized from Berry, 13 destroyed).[17]

---

[17]   In the only known case in Puerto Rico, Ebrin Castro, had 31. *United States v. Ebrin Castro*, *supra*; *United States v. Anderson, supra* (slip opinion at DKT lodged in district court docket at DKT 723)(114 dogs seized from defendant Anderson, 70 destroyed (DKT 723 at 45)); co-defendant Richardson had 32, 24 destroyed (District Court dockets 302  and 723) *And see*, Anderson Judgment, SUPP APP at 1-7, co-defendant judgments reflected on the docket, found at SUPP APP at 8-14; *Courtland*, *supra* (120 dogs seized, most destroyed); *United States v. 63 Pitbull type Dogs,* __S.D. Ga. (cited by prosecution witness at DKT 119, APP at 85 (James Lampkin, defendant);  *Hadley*, *supra*) (100 dogs seized in conspiracy), discussed at at DKT 119 at 42-43, 149-150, APP 85-86, 192-193. In *Berry*, *supra*, Addison had 59 dogs, 24 destroyed.

<u>B Cases relied upon by the prosecution induced error and created unwarranted</u>
<u>disparity</u>.

It is permissible for a variant sentence to bypass 18 U.S.C. §3553(a)(2)(D)(4)(

"the kinds of sentence and sentencing range" established by the Guidelines and

§3553(a)(2)(D)(5)( "any pertinent policy statement"), it may not ignore

§3553(a)(2)(D)(6): "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct." And,

most significantly, the law does not authorize a departure, or a variance, from the

parsimony principle of 18 U.S.C. §3553(a): "The court *shall* impose a sentence

sufficient, but not greater than necessary" to comply with the objectives of paragraph

(2). These are not mere discretionary Guidelines, but Congressional mandates

implementing constitutional principles of fairness and equality. They matter to

defendants, to the judicial system, and to the public.

In support of its requested 120 months below, the prosecution cited cases

producing sentences of 123 and 96 months. DKT 119 at 152-153, APP at 195-196 and

DKT 194 at p.4. It failed to mention the criminal history of the defendants, the fact that

those sentences were the product of offenses of a different nature, or detail the basis for

any "extraordinary cruelty" findings.

The 123-month sentence was imposed in *United States v. Meyers*, supra, was

remanded for consecutive 60 month sentences for dog fighting and a 63-month consecutive sentence for firearms violations. His Criminal History VI included prior animal welfare convictions. SUPP APP at 52-56.

Mr. Anderson's 96-month sentence included 60 months on the dogfighting counts, to be followed by 36 months for six additional counts, including one for violation of 18 U,S.C. §1955 (running a gambling business related to dog fighting). In addition to helping to electrocute dogs (114 of which he had on his property, 70 of them such poor condition and/or so aggressive that they were destroyed by the ASPCA), he was the leader of a 10 state gambling ring that also traded in guns and drugs. Upon arrest, he had a firearm and crack cocaine at hand for which he was not charged. *Anderson, supra* at note 2, Sentencing Transcript, DKT 723, at 68, 83-85 *Id*. at 68.[18]

Mr. Allen's 60 month sentence was due to the fact that this # 2 defendant in the Anderson fight-gambling-drug operation sold a ton or more of marijuana to co-defendants for them o sell. Anderson Sentencing Transcript at p. 22.

Mr. Hargrove, as discussed *supr*a, was "a legend" in the dog fighting world, kept up to 250 dogs at a time, had jumper cables used to execute them and a large pit with

---

[18] Two other defendants in that case were sentenced to the statutory maximum 60 months, one to 48, one to 36, one to 18, one to 2 months and 3 to 5 years probation. Pages from the Anderson Docket with the judgments entered against various defendants are found at entries 565, 567, 569, 573, 581, 583, 595, 597, 599, 668, 670, 672, 674. See Judgments on docket at SUPP APP at 8-14.

dog carcasses. All 34 seized at the time of his arrest were destroyed by the authorities. His 60-month sentence was within the GSR.

Mr. Lockett had 214 dogs seized from his property. He was the leader of a large dog fighting operation, but this appears to have been a sideline of his large-scale drug operation. A three-month variance above the GSR (43-57 months) was due to his extraordinary cruelty in stapling, rather than suturing, a dog's wounds. It was followed by a consecutive (below the GSR) sentence on the gun charges. *United States v. Jarvis Lockett*, supra at p. 14 (a case in which the case agent below was involved, DKT 119 at 43, APP at 86). See SUPP APP at 48-51.

The 21-count, 10-defendant indictment in *United States v. Andrews*, No 7-16-CR-00122-BO-1-10 (E.D.N.C.), *aff'd. sub nom. United States v. Richardson*, (Nos 14-4761, 4770, 18-4023 and 18-4023(Andrews), *(per curiam, unpublished*, 12/12/2019, filed at DKT 387 in district court case) involved a multi-faceted animal fighting and drug distribution conspiracy. Defendant Richardson's 96 month sentence (60 months on the animal welfare conspiracy count) accounts for the proximity of a handgun and crack cocaine at the time of his arrest and uncharged sales of heroin, and the under-representation of his criminal history (31 adult convictions, of which only 1 counted for Criminal History purposes). Richardson Variance Order, SUPP. APP 57-62.

Chadwick, another member of the same conspiracy, was sentenced to 60 months

on each of three counts of violating 18 U.S.C. § 371, 7 U.S.C. §§2156(a)(l) and 2156(b)(18 U.S.C. §49) , all to be served concurrently. He had a 35-year history in dog fighting, with 33 on his property, 18 of which had to be destroyed. Chadwick Variance Order at SUPP APP 23-27.

A within-Guidelines sentence of 108 months was imposed upon co-defendant Andrews–"a serious and violent drug dealer" for both animal fighting and drug distribution. He had 63 dogs on his property, of which 30 were destroyed as too aggressive to be placed in homes. Andrews Variance Order, SUPP APP at 15-18.

Here, while imposing a non-Guidelines sentence, the judge was careful to bracket the decision with personal characteristics of the defendant ("age, high blood pressure and insomnia," "family ties and responsibilities as the co-owner of a pizza restaurant and main support for his family. His eldest son's mental health condition, Mr. Casillas' physical and mental health conditions which require monitoring and medication," (DKT 119 at 184, APP at 227) but that pillow of mostly mitigating facts explains neither the ultimate sentence or the degree of the variance.

The judge also referred to this as "Mr. Casillas-Montero's fifth known arrest and third conviction, and he has a reported history of marijuana use since 1996. He has previous convictions for illegal possession of a firearm and controlled substances." DKT 119 at 192, APP at 227. Actually, the "firearm" was a box of bullets, and the

"controlled substances" was marijuana. PSR, Sealed APP at 10, and he successfully two years' completed probation imposed in 2007.

Like other ignored or rejected Guidelines adjustments, USSG §4A 1.3 for an under-representation of criminal history was not cited, and would not have gone far. Even combined with a 2003 driving incident resulting in a plea to some form of resistance to authority with no reported sentence and nol prossed 2019 charges for a family incident, this hardly creates a trajectory of either violence or uncontrolled criminal impulse. Again, they pale in comparison to the record of many of those who received significant increments to the Guidelines for this offense.[19]

Finally, despite the judge's finding that the PSR's determination that Mr. Casillas had accepted responsibility, at sentencing he signaled a lack of contrition as a basis for the higher sentence. DKT 119 at 183, APP at 226.

Mr. Casillas' involvement for 35 years is prolonged, but it also means he began at

---

[19] *See, e.g., Hargrove, supra* (3 prior animal welfare convictions, *United States v. Jarvis Lockett*, et al., Nos. 5:21-CR-00003, 00040 (M.D. Ga.), *aff'd*, No. 22-10528 (11th Cir. 2024)(*per curiam*, *unpublished*), SUPP APP at 48-51))(sentence of 60 months on dog fighting, CHC III); *United States v. Henderson*, No. 17-11931 (11th Cir. 2018)(*per curiam, unpublished,* SUPP APP at 31-47), (Henderson was CHC IV); *Richardson, supra*, (DKT 302)("adult record of convictions 5 pages long"), citing USSG §4A1.3 (under-represented criminal history, 31 prior animal welfare convictions); *United States v. Meyers*, 21-13891 (11th Cir. 2024) *per curiam*, unpublished (Myers was CHC VI, 3 prior animal welfare convictions), SUPP APP at 52-56.

age 17.  Other cases also reflect the practice that young men grow up in this arena, as did Mr. Casillas, and learn from trusted elders. *See, e.g.*, *Anderson*, (co-defendant Chadwick, 35 years)  *Hargrove*, *supra* (defendant engaged for 40 years, a "legend" in the dogfighting world, bred, trained, famed for aggressive dogs).

Finally, it is obvious that  Mr. Casillas' participation began long before any law against dogfighting was enforced in Puerto Rico. Fairness, if not laches, prohibits reliance upon the failure to enforce as a basis to heap extraordinary punishment on Mr. Casillas.

## CONCLUSION

The desire to stamp out a cruel activity must not be allowed to overwhelm the procedural and substantive rights of individual defendants. One sentence can accomplish only so much general deterrence, and that goal, too, must be measured by the parsimony standard. Mr. Casillas' history makes clear that the goal of specific deterrence provides little support for a man who has aged out of recidivism, as well as dog fighting.

For all the foregoing reasons, the public reputation of federal courts for transparency and fairness requires this sentence be remanded for resentencing for no more than 72 months.

Respectfully submitted,

DATED: June 8, 2024

s/ *Linda Backiel*
LINDA BACKIEL
Ct. Appeals Bar #8766
267 C. Sierra Morena PMB 597
San Juan, Puerto Rico 00926-5583
787-751-4941 lbackielr@gmail.com
787-3685740

*CERTIFICATE OF SERVICE*

I hereby certify that this Appellant's Brief on Appeal was filed using the Court's electronic filing system, which will automatically notify the Chief of the Criminal Division of the Office of the United States Attorney for the District of Puerto Rico.

s/*Linda Backiel*
LINDA BACKIEL


CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed.R.App.R. 32(a)(7)(B) because:

2. It contains 11,457 words, excluding Tables of Contents and Cases only as measured by the word processing program identified below.

3. It complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R. App.P. 32(a)(6) because it has been prepared in Times New Roman 14 point typeface.

s/*Linda Backiel*
Attorney for Appellant

## TABLE OF CONTENTS
## ADDENDUM

Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD-1

 Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD-8

Amended Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD-9

Notice of Appeal (Amended Judgment) . . . . . . . . . . . . . . . . . . . . . . . ADD-10

Richardson Variance Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ADD-18

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| | Case Number:  3:22-CR-00437-SCC |
| Antonio CASILLAS-MONTERO | USM Number:  25528-510 |
| | Jose R. Aguayo, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    One, Three and Five of the Indictment on 5/3/2023.

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 49 and 371 and 7 §§ 2156(a)(1) & (2)(A), 2156(b) | Conspiracy to Violate the Animal Welfare Act | 11/3/2022 | One (1) |
| 7 U.S.C. §2156(b) & 18 U.S.C. §§ 49 | Possession of Dogs for Use in an Animal Fighting Venture | 11/3/2022 | Three (3) |
| 7 U.S.C. §2156(b) & 18 U.S.C. §§ 49 | Possession of Dogs for Use in an Animal Fighting Venture | 11/3/2022 | Five (5) |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/22/2023
Date of Imposition of Judgment

s/ Silvia L. Carreno-Coll
Signature of Judge

Silvia L. Carreno-Coll, U.S. District Judge
Name and Title of Judge

9/22/2023
Date

**ADD-1**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT:     Antonio CASILLAS-MONTERO
CASE NUMBER:   3:22-CR-00437-SCC

## IMPRISONMENT

       The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Thirty-six (36) months as to Count One, Twenty-four (24) months as to Count Three, and Twenty-four (24) months as to Count Five, to be served consecutively for a total of Eighty-four (84) months of imprisonment.

    ☑ The court makes the following recommendations to the Bureau of Prisons:
       The Court recommends that the defendant be designated to an institution in the state of Florida.

    ☑ The defendant is remanded to the custody of the United States Marshal.

    ☐ The defendant shall surrender to the United States Marshal for this district:

      ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

      ☐ as notified by the United States Marshal.

    ☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

      ☐ before 2 p.m. on _____ .

      ☐ as notified by the United States Marshal.

      ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**ADD-2**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:    Antonio CASILLAS-MONTERO
CASE NUMBER:   3:22-CR-00437-SCC

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

 Three (3) years for each count to be served concurrently with each other.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
      ☐ The above drug testing condition is suspended, based on the court's determination that you
         pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
      restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as
      directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
      reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**ADD-3**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

|  |  |  |  |
|---|---|---|---|
| | Judgment—Page | 4 | of 7 |

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER:  3:22-CR-00437-SCC

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**ADD-4**

Judgment—Page ___5___ of ___7___

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER: 3:22-CR-00437-SCC

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall cooperate in the collection of a DNA sample as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563 (a)(9).

5. The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

6. The defendant shall participate in an approved substance abuse monitoring and/or treatment services program. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release; thereafter, submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year accordance with the Drug Aftercare Program Policy of the U.S. Probation Office approved by this Court. If deemed necessary, the treatment will be arranged by the officer in consultation with the treatment provider. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the Probation Officer based on the ability to pay or availability of third party payment.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page __6__ of __7__

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER: 3:22-CR-00437-SCC

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ 5,500.00 | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADD-6**

Judgment — Page ___7___ of ___7___

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER:  3:22-CR-00437-SCC

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ __5,800.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:
The forfeiture provision in paragraph 19 of the Plea Agreement is ordered enforced.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

## ADD-7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff

vs.                                                    Case # 3:22-cr-00437-SCC

**ANTONIO CASILLAS-MONTERO,**
Defendant

### NOTICE OF APPEAL

**TO THE HONORABLE COURT**:

Comes Now, **Antonio Casillas-Montero**, through this undersigned counsel, and respectfully gives notice of appeal to the United States Court of Appeals for the First Circuit from the Sentence entered against him by the United States District Court for the District of Puerto Rico, on September 22, 2023 (Dkt. # 105).

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 2nd day of October 2023

**CERTIFICATE OF SERVICE:** I hereby certify that on this date, October 2, 2023, I filed the foregoing document with the Clerk of the Court for the District of Puerto Rico, through the CM/ECF Electronic Filing System, which will send notification of this filing to **AUSA Jonathan L. Gottfried.**

*/s/ José R. Aguayo-Caussade.*
**JOSE R. AGUAYO-CAUSSADE, ESQ.**
USDC-PR # 123301
Urb. Baldrich
569 Tnte. Cesar Gonzalez Street
San Juan, PR   00918-3712
Tel. (787) 765-0814
Fax (787) 274-0071
E-Mail: joseraguayo@gmail.com

All in violation of 18 U.S.C. §§ 49, 371 and 7 U.S.C. §§ 2156(a)(1), (2)(A) & (b).

**COUNTS TWO THROUGH FIVE**
**POSSESSION OF DOGS FOR USE IN AN ANIMAL FIGHTING VENTURE**
**(7 U.S.C. § 2156 (b))**
**(18 U.S.C. § 49)**

On or about October 6, 2022, defendant Antonio Casillas Montero (a/k/a Stone City

Kennel) housed the following four dogs for use in dog fighting at his property in Humacao,

Puerto Rico:

| Count | Dog |
|:---:|:---:|
| 2 |  |

AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT

District of Puerto Rico

UNITED STATES OF AMERICA

**v.**

Antonio CASILLAS-MONTERO

)
)
)
)
)
)
)
)

**AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number:  3:22-CR-00437-SCC

USM Number:  25528-510

Jose R. Aguayo, Esq.

Defendant's Attorney

**Date of Original Judgment:**   9/22/2023

*(Or Date of Last Amended Judgment)*

**THE DEFENDANT:**

☑ pleaded guilty to count(s)   One, Three and Five of the Indictment on 5/3/2023.

☐ pleaded nolo contendere to count(s)

which was accepted by the court.

☐ was found guilty on count(s)

after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 49 and 371 and 7 §§ 2156(a)(1) & (2)(A), 2156(b) | Conspiracy to Violate the Animal Welfare Act | 11/3/2022 | One (1) |
| 7 U.S.C. §2156(b) & 18 U.S.C. §§ 49 | Possession of Dogs for Use in an Animal Fighting Venture | 11/3/2022 | Three (3) |
| 7 U.S.C. §2156(b) & 18 U.S.C. §§ 49 | Possession of Dogs for Use in an Animal Fighting Venture | 11/3/2022 | Five (5) |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

**\*\*\*** ☑ Count(s)   remaining   ☐ is   ☑ are dismissed on the motion of the United States. **\*\*\***

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/22/2023

Date of Imposition of Judgment

s/ Silvia L. Carreno-Coll

Signature of Judge

Silvia L. Carreno-Coll                U.S. District Judge

Name and Title of Judge

10/3/2023

Date

**ADD-10**

AO 245C (Rev. 09/19)    Amended Judgment in a Criminal Case
Sheet 2 — Imprisonment                                                                                                 (NOTE: Identify Changes with Asterisks (*))

Judgment — Page    2    of    7

DEFENDANT:   Antonio CASILLAS-MONTERO
CASE NUMBER:   3:22-CR-00437-SCC

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :
Thirty-six (36) months as to Count One, Twenty-four (24) months as to Count Three, and Twenty-four (24) months as to Count Five, to be served consecutively, for a total of Eighty-four (84) months of imprisonment.

☑ The court makes the following recommendations to the Bureau of Prisons:
   The Court recommends that the defendant be designated to an institution in the state of Florida.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at   _____   ☐ a.m.   ☐ p.m.   on   _____   .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on   _____   .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on   _____   to   _____

at   _____   with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By   _____
DEPUTY UNITED STATES MARSHAL

**ADD-11**

Case: 23-1859    Case 3:22-cr-00437-SCC Document 109    Filed 09/22/23    Page 33 of 7    Entry ID: 6599630
AO 245C (Rev. 09/19)   Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release
Judgment—Page ___3___ of ___7___
(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER:  3:22-CR-00437-SCC

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

Three (3) years for each count to be served concurrently with each other.

# MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
     ☐   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐   You must make restitution in accordance with 18 U.S.C. § 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑   You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐   You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**ADD-12**

AO 245C (Rev. 09/19)  Amended Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page __4__ of __7__

DEFENDANT:   Antonio CASILLAS-MONTERO
CASE NUMBER:   3:22-CR-00437-SCC

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

**ADD-13**

AO 245C (Rev. 09/19)  Amended Judgment in a Criminal Case
Sheet 3D — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

Judgment—Page __5__ of __7__

DEFENDANT:  Antonio CASILLAS-MONTERO
CASE NUMBER:  3:22-CR-00437-SCC

## SPECIAL CONDITIONS OF SUPERVISION

 1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall cooperate in the collection of a DNA sample as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563 (a)(9).

5. The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

6. The defendant shall participate in an approved substance abuse monitoring and/or treatment services program. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release; thereafter, submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year accordance with the Drug Aftercare Program Policy of the U.S. Probation Office approved by this Court. If deemed necessary, the treatment will be arranged by the officer in consultation with the treatment provider. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the Probation Officer based on the ability to pay or availability of third party payment.

**ADD-14**

AO 245C (Rev 09/19)   Amended Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties
(NOTE: Identify Changes with Asterisks (*))

Judgment — Page 6 of 7

DEFENDANT: Antonio CASILLAS-MONTERO
CASE NUMBER: 3:22-CR-00437-SCC

## CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 300.00 | $ 0.00 | $ 5,500.00 | $ | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ 0.00

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

    ☐ the interest requirement is waived for ☐ fine ☐ restitution.

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADD-15**

AO 245C (Rev 09/19)  Amended Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

(NOTE: Identify Changes with Asterisks (*))

Judgment — Page    7    of    7

DEFENDANT:   Antonio CASILLAS-MONTERO
CASE NUMBER:   3:22-CR-00437-SCC

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**   ☑   Lump sum payment of $   5,800.00   due immediately, balance due

     ☐   not later than          , or
     ☐   in accordance with   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal       (e.g., weekly, monthly, quarterly) installments of $       over a period of       (e.g., months or years), to commence       (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal       (e.g., weekly, monthly, quarterly) installments of $       over a period of       (e.g., months or years), to commence       (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within       (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate. |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☑   The defendant shall forfeit the defendant's interest in the following property to the United States:

     The forfeiture provision in paragraph 19 of the Plea Agreement is ordered enforced.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**ADD-16**

33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
Plaintiff

vs.                                                    Case # 3:22-cr-00437-SCC

**ANTONIO CASILLAS-MONTERO,**
Defendant

### AMENDED NOTICE OF APPEAL

**TO THE HONORABLE COURT**:

Comes Now, **Antonio Casillas-Montero**, through this undersigned counsel, and respectfully gives notice of appeal to the United States Court of Appeals for the First Circuit from the Judgment and the Sentence entered against him by the United States District Court for the District of Puerto Rico, on September 22, 2023. (Dkt. # 104-105, 109)

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6Th day of October 2023.

**CERTIFICATE OF SERVICE:** I hereby certify that on this date, October 6, 2023, I filed the foregoing document with the Clerk of the Court for the District of Puerto Rico, through the CM/ECF Electronic Filing System, which will send notification of this filing to **AUSA Jonathan L. Gottfried.**

*/s/ José R. Aguayo-Caussade.*
**JOSE R. AGUAYO-CAUSSADE, ESQ.**
USDC-PR # 123301
Urb. Baldrich
569 Tnte. Cesar Gonzalez Street
San Juan, PR   00918-3712
Tel. (787) 765-0814
Fax (787) 274-0071
E-Mail: joseraguayo@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:16-CR-122-BO-7

UNITED STATES OF AMERICA,    )
          plaintiff,    )
                        )
           v.    )             O R D E R
                        )
AARON RICHARDSON,    )
          defendant.    )

On May 30, 2017, defendant Aaron Richardson pled guilty to count nine, conspiracy to possessing, training, transporting and delivering an animal for purposes of participating in an animal fighting venture and aiding and abetting, in violation of 7 U.S.C. § 2156(b) and 18 U.S.C §§ 49(a) and 2, and count twenty, possessing animals for the purpose of participating in an animal fighting venture, in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. §49(a), of his indictment. On November 27, 2017, the government moved for an upward departure at sentencing pursuant to U.S.S.G. § 2E3.1. Defendant appeared before the Court for sentencing on December 1, 2017, and was notified that the Court contemplated the possibility of an upward departure. Defendant was sentenced to a term of 60 months' imprisonment in the Bureau of Prisons on count nine and 36 months' imprisonment on count twenty, for a total of 96 months. The Court makes the following findings in support of its upward variance sentence.

Pursuant to 18 U.S.C. § 3553(a), a sentencing court has a duty to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the [sentencing statute]." Once the defendant's Guidelines sentencing range has been established, the sentencing

court must decide "whether a sentence within that range serves the factors set forth in § 3553(a)[1] and, if not, select a sentence within statutory limits that does serve those factors." *United States v. Tucker*, 473 F.3d 556, 560 (4th Cir. 2007) (internal quotation and citation omitted). After permitting the parties to argue with regard to sentencing, the court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The court must then "make an individualized assessment based on the facts presented, [and if it] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. A sentence that deviates can do so on the basis of a Guidelines-sanctioned departure, in accordance with the § 3553(a) factors, or some other reason. *United States v. Evans*, 526 F.3d 155, 164 (4th Cir. 2008). The "method of deviation from the Guidelines range—whether by departure or by varying—is

---

[1] The factors set forth in § 3553(a) are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
>> (B) to afford adequate deterrence to criminal conduct
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct
> (7) the need to provide restitution to any victims of the offense.

2

irrelevant so long as at least one rationale is justified and reasonable." *United States v. Diosdado-Star*, 630 F.3d 359, 365-66 (4th Cir. 2011).

At the sentencing hearing, the Court found that defendant's advisory Guidelines range, as calculated by the Probation Office, was 12-18 months' imprisonment, based on a total offense level of 13 and a criminal history category of I. The maximum sentence applicable on either count is five years' imprisonment. Having considered the Presentence Investigation Report ("PSR"), the arguments of counsel with regard to sentencing, and the factors enumerated in § 3553(a), the Court finds that a variance sentence is appropriate in this case.

To begin, the Court finds that a departure from the Guidelines is warranted. Such a departure is appropriate for three reasons: the scale of defendant's involvement in dog fighting, the inadequacy of accounting for defendant's criminal history, and the existence of related uncharged conduct.

The sentencing guidelines for animal fighting ventures were updated in 2016 to better account for the cruelty and violence inherent in participating in such activity. U.S.S.G. §2E3.1. But the guidelines do not distinguish between different categories of offenders. Specifically, the guidelines do not differentiate between those offenders who engage in animal fighting once or twice and those who offend repeatedly over a long period of time. Because of this, the guidelines specifically account for the possibility of an upward departure for those offenses involving extraordinary cruelty or on an exceptional scale.

The scale of defendant's involvement in dog fighting was striking. According to the ASPCA, a typical offender is someone who attends animal fights occasionally and has one or two dogs or a few roosters, who are used for fighting a few times a year. The evidence here shows that defendant is not typical. 32 pit bulls were found on defendant's property. The animals

3

were scarred and wounded, with worn teeth and other signs of fighting. They were malnourished and underweight. One dog was missing a leg. Many of the dogs had to be euthanized. Defendant also had large amounts of dog fighting paraphernalia and training supplies, including treadmills, break sticks, veterinary supplies, steroids, heavy collars, and training chains, some weighing more than the dogs themselves. Defendant regularly attended dog fights and was heavily involved in breeding fighting dogs, even driving a van full of dogs from a breeder in Oklahoma. It is clear that dog fighting was an enterprise in which he invested significant time and money, working to expand the reach of dog fighting in this district. Because of the scale of his involvement, an upward departure is appropriate.

Second, the criminal history calculation as determined by the sentencing guidelines is inadequate here. The Sentencing Commission was prepared for this possibility, and provided for upward departures when a defendant's criminal history category "substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. §4A1.3(a)(1).

Whether prior sentences were not used in calculating the category is relevant to this inquiry. Of defendant's 31 adult criminal convictions, only one was scored for the purposes of determining his criminal history category. This means defendant has five unscored adult felonies. The volume and regularity of his criminal activity, including the number of offenses committed while on probation, is evidence that he does not have respect for the law and is likely to continue to commit crimes. Therefore, the Court finds that his criminal history category is underrepresentative and an upward departure is warranted.

Third, defendant's uncharged conduct merits a departure. According to the Sentencing Guidelines, underlying conduct that was not used for the purpose of determining the guideline

4

range may be considered. § 5K2.21. Throughout the investigation that lead to defendant's arrest and guilty plea, the government discovered evidence of defendant's involvement in selling drugs. Specifically, evidence detailed that defendant was involved in large heroin deals in 2015 and 2016. This information, which was incorporated into defendant's PSR and which defendant's counsel did not challenge, was not used to charge defendant. Therefore, it is appropriate to consider defendant's history of drug dealing, which supports departing upward from defendant's guidelines range.

The § 3553(a) factors also militate in favor of an upward variance in this case. Dog fighting is a cruel enterprise, and defendant was deeply involved in it. Dog fights are brutal and drawn out: dogs sustain significant injuries and sometimes are put down after the fight. The dogs' suffering is not limited to the actual fight: dogs are trained to be aggressive and antagonistic, are kept under appalling conditions, and receive inadequate care. These offenses are serious and the sentence should match them. Additionally, defendant's character indicates that a higher sentence is warranted. He was first cited for cruelty to animals in 2004, more than twelve years ago. His lengthy criminal history and the flagrancy of his participation in dog fighting show both his lack of respect for the law and his likelihood to continue committing crimes. A variant sentence is necessary to provide adequate punishment and deterrence.

Accordingly, a sentence within the Guidelines range would be insufficient to adequately serve the § 3553(a) factors and the purposes of the sentencing statute. After considering defendant's individual circumstances and the facts of this case, the Court holds that a variance sentence of 60 months' imprisonment on count nine and 36 months' imprisonment on count twenty is appropriate and reasonable in this matter. This Court also imposes a term of three years' supervised release, on the condition that defendant not engage in any activity related in

5

ADD-22

any fashion to dog fighting, or owning, harboring, possessing or caring for any dog without the approval of the Probation Office.

SO ORDERED, this _6_ day of December, 2017

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

ADD-23